## No. 25-10987

# United States Court of Appeals

### *for the*

# Eleventh Circuit

---

JESSICA GUASTO,

*Plaintiff/Appellant,*

– v. –

THE CITY OF MIAMI BEACH, FLORIDA, a Florida municipality,
RICHARD M. CLEMENTS, in his individual capacity,
STEVEN COSNER, in his individual capacity,

*Defendants/Appellees.*

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:22-cv-21004-MD (Hon. Melissa Damien)

---

# APPELLEES' ANSWER BRIEF

---

Henry Hunnefeld
Benjamin Braun
**CITY ATTORNEY'S OFFICE
  OF MIAMI BEACH**
1700 Convention Center Dr.
Fourth Floor-Legal Department
Miami Beach, FL 33139
(305) 673-7470

Michael L. Elkins
**MLE LAW**
1212 Northeast 16th Terrace
Fort Lauderdale, FL 33304
(954) 401-2608

*Counsel for Appellees*

---

CP COUNSEL PRESS    (800) 4-APPEAL • [386658]

*Jessica Guasto v. The City of Miami Beach, Florida, et al.*
No. 25-10987

# CERTIFICATE OF INTERESTED PERSONS
# AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Eleventh Circuit Rule 26.1-1, I certify that, to the best of my knowledge, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this petition, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

## I.    Corporate Disclosure Statement

Neither corporation is owned by any publicly traded company, nor is either corporation publicly traded. Pursuant to 11th Cir. R. 26.1-3(b), no publicly traded company or corporation has an interest in the outcome of this appeal.

## II.    Certificate of Interested Persons

1.    Alexander Appellate Law P.A.

2.    Alexander, Samuel, Esq.

      c/o Alexander Appellate Law P.A.

3.    Braun, Benjamin, Esq.

4.    City of Miami Beach, Florida

5.    Clements, Richard

C-1

*Jessica Guasto v. The City of Miami Beach, Florida, et al.*
No. 25-10987

6.      Cosner, Steven

7.      Damian, Melissa

8.      Daragjati, Paul, Esq.

9.      Derek Smith Law Group PLLC

10.     Elkins, Michael, Esq.

11.     Ellis, Michael J., Esq.

12.     Gayle, Darrin P

13.     Guasto, Jessica (n/k/a Jessica Salabarria)

14.     Hunnefeld, Henry, Esq.

15.     MLE Law, LLC

16.     Paz, Rafael A., Esq.

17.     Torres, Edwin G


Dated: October 17, 2025

*/s: Michael L. Elkins*
Michael L. Elkins

C-2

## STATEMENT REGARDING ORAL ARGUMENT

Appellee, The City of Miami Beach ("City"), maintains that the written record and briefs fully and adequately present all necessary facts and legal arguments, leaving no room for confusion or the need for clarification through oral argument. Accordingly, the City believes that oral argument is not necessary to enhance the Court's understanding of the facts or the law, and thus, will not aid the Court in resolving this appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT ................................C-1

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

TABLE OF AUTHORITIES ....................................................................................iv

STATEMENT OF THE ISSUE..................................................................................1

STATEMENT OF THE CASE...................................................................................2

Procedural History ........................................................................................2

Statement of Facts..........................................................................................3

Appellant's 2018 EEOC Charge and Settlement Agreement ..............3

The 2020 Internal Affairs Investigation Against Appellant..................4

Appellant's 2020 EEOC Charge of Discrimination............................5

The November 2020 Meeting and Settlement Discussions ..................5

The Settlement Agreement and the Last Chance Agreement ..............6

Last Chance Agreements In General At the City.................................8

The Relationship Between Appellant and Lieutenant Cosner ..............8

Lieutenant Cosner's Allegations of Employee Misconduct
Against Appellant................................................................................9

The January 19, 2021, Meeting.........................................................11

Implementing Appellant's Resignation.............................................14

The Decision to Implement Appellant's Resignation Is Not
Reviewable and Her Own Union Did Not Challenge
Implementation of Her Resignation...................................................15

The Testimony of Nicholas Guasto ("N. Guasto") ...........................16

Appellant's Protected Activity and Connection to Cosner's
Allegations........................................................................................17

SUMMARY OF THE ARGUMENT .....................................................................18

STANDARD OF REVIEW .................................................................................19

ARGUMENT AND CITATION OF AUTHORITY .............................................19

    I.    THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING THE CITY'S MOTION FOR FINAL SUMMARY JUDGMENT BECAUSE APPELLANT INCORRECTLY ARGUES THAT THE ISSUE ON APPEAL IS WHAT A REASONABLE JUROR COULD CONCLUDE .........19

    II.    THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING THE CITY'S MOTION FOR FINAL SUMMARY JUDGMENT BECAUSE THE MAJORITY OF THE ISSUES/ARGUMENTS APPELLANT RAISES ON APPEAL WERE NOT PRESERVED .................................................21

        A.    The Argument/Theory That Chief Clements Engaged in a Misinformation Campaign Is Not Preserved For Appeal .........23

        B.    The Argument/Theory that the City Has Never Conditioned a Last Chance Agreement on an Employee Releasing an EEOC Charge Is Not Preserved for Appeal ........26

    III.    THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING THE CITY'S MOTION FOR FINAL SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT FROM WHICH A REASONABLE FACT FINDER COULD FIND IN FAVOR OF APPELLANT .................................................................29

        A.    Appellant Incorrectly Argues that the City Conditioned Dismissal of Her 2020 Charge On Entering into the Last Chance Agreement ...............................................................30

        B.    There Are No Deviations From Protocol That Establish Pretext ...............................................................................34

CONCLUSION .................................................................................................36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Access Now, Inc. v. Sw. Airlines Co.*,
   385 F.3d 1324 (11th Cir. 2004) ...................................................... 21, 22

*Baskerville v. Secretary of Department of Veteran Affairs*,
   Case No. 6:18-cv-1728-WWB-DCI, 2021 WL 1338203
   (M.D. Fla. Feb. 8, 2021) ........................................................... 30, 31, 32

*Chapman v. AI Transp.*,
   229 F.3d 1012 (11th Cir. 2000) ...................................................... 29

*Childrey v. Bennett*,
   997 F.2d 830 (11th Cir. 1993) ....................................................... 20

*Coats & Clark, Inc. v. Gary*,
   755 F.2d 1506 (11th Cir. 1985) ..................................................... 20

*Combs v. Plantation Patterns*,
   106 F.3d 1519 (11th Cir. 1997) ..................................................... 29

*Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*,
   830 F.3d 1242 (11th Cir. 2016) ..................................................... 20

*In re Pan Am. World Airways, Inc.,*
   *Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*,
   905 F.2d 1457 (11th Cir. 1990) ..................................................... 22

*Juris v. Inamed Corp.*,
   685 F.3d 1294 (11th Cir. 2012) ..................................................... 22

*McCreight v. Auburnbank*,
   117 F.4th 1322 (11th Cir. 2024) ...................................... 21, 22, 26, 27

*Mullin v. Secretary, U.S. Department of Veteran Affairs*,
   149 F.4th 1244 (11th Cir. 2025) .................................................... 19

*Nunez v. Superior Oil Co.*,
   572 F.2d 1119 (5th Cir. 1978) ...................................................... 20

*Rojas v. Florida*,
   285 F.3d 1339 (11th Cir. 2002) ..................................................... 34

iv

*Springer v. Convergys Customer Mgmt. Grp. Inc.*,
  509 F.3d 1344 (11th Cir. 2007) ...............................................................29

*Su v. Broward County, Florida*,
  Case No. 0:23-CV-61385-CIV-DIMITROULEAS, 2024 WL 1236243
  (S.D. Fla. Mar. 1, 2024) ...........................................................................2

*Taxinet Corp. v. Leon*,
  114 F.4th 1212 (11th Cir. 2024) ..............................................................19

*Univ. of Texas Sw. Med. Ctr. v. Nassar*,
  870 U.S. 338 (2013).................................................................................29

*Walker v. Jones*,
  10 F.3d 1569 (11th Cir. 1994) .................................................................22

*Wilbur v. Corr. Servs. Corp.*,
  393 F.3d 1192 (11th Cir. 2004) ................................................................2

*Williams v. Radford*,
  64 F.4th 1185 (11th Cir. 2023) ...............................................................19

*XU v. Porsche Cars North America, Inc.*,
  Case No. 23-10585, 2023 WL 7295228 (11 Cir. Nov. 6, 2023) ................... 21, 22

**Statutes & Other Authorities:**

Florida Statute § 112.532 ...............................................................................13

Florida Statute § 112.534 ...............................................................................13

Fed. R. Civ. P. 56 ...........................................................................................19

v

## STATEMENT OF THE ISSUE

I.    Whether the District Court correctly entered Summary Judgment in favor of the City.

## STATEMENT OF THE CASE

### **Procedural History**

This is an employment discrimination case brought by Appellant, a former Sergeant with the City's Police Department.

On April 2, 2022, Appellant filed her ten (10) count Complaint [DE 1].[1]

On July 10, 2023, the District Court issued its Order dismissing eight (8) of the ten (10) counts [DE 32] and leaving only Counts III and IV against the City, which are claims for retaliation under Title VII and the Florida Civil Rights Act ("FCRA"), respectively.[2]

Appellant does not challenge the District Court's Order [DE 32] dismissing eight (8) of her ten (10) counts. Therefore, there is nothing for Appellees Richard Clements and Steven Cosner to address.

---

[1]    In referring to [DE _] the City is referring to the District Court Docket Entry Number. In referring to [DE App. _] the City is referring to this Court's Docket Entry Number.

[2]    Courts in the Eleventh Circuit apply the same legal analysis to claims brought under Title VII and the FCRA. *See Su v. Broward County, Florida*, Case No. 0:23-CV-61385-CIV-DIMITROULEAS, 2024 WL 1236243, at *3 (S.D. Fla. Mar. 1, 2024) (*citing Wilbur v. Corr. Servs. Corp.*, 393 F.3d 1192, 1195 n.1 (11th Cir. 2004) ("The [FCRA] was patterned after Title VII, and Florida courts have construed the act in accordance with decisions of federal courts interpreting Title VII.")).

On February 3, 2024, Appellant filed her Stipulation To Non-Jury Trial. *See* DE 40.[3]

On February 21, 2025, the District Court entered its Order on Defendant's Motion for Summary Judgment [DE 108] granting summary judgment in favor of the City. On February 24, 2025, the District Court entered Final Judgment in favor of the City [DE 109, 110].

On March 24, 2025, Appellant, now on her sixth lawyer, filed her Notice of Appeal [DE 112].

On August 15, 2025, Appellant filed her Initial Brief [App. DE 18].

## Statement of Facts

On or about January 27, 2012, the City hired Appellant for the position of Police Officer. *See* DE 69 ¶ 5; DE 69-4.[4]

### *Appellant's 2018 EEOC Charge and Settlement Agreement*

On August 31, 2018, Appellant filed a Charge of Discrimination ("2018 Charge") with the EEOC alleging gender discrimination. *See* DE 69 ¶ 6; DE 69-5.[5]

---

[3]    DE 40 is in the City's Supplemental Appendix. Importantly, throughout her Initial Brief, Appellant routinely references issues going to the "jury." *See* App. DE 18, pp. 5, 29, 30, 32, 33, 36, 42. This is incorrect. Appellant waived her right to a trial by jury. *See* DE 40.

[4]    DE 69-4, is in the City's Supplemental Appendix.

[5]    DE 69-5, is in the City's Supplemental Appendix.

3

The 2018 Charge makes no mention of sexual harassment or any issues between Appellant and then Sergeant, now Lieutenant, Steven Cosner ("Lieutenant Cosner"). *See* DE 69 ¶ 6; DE 69-5; DE 69-6 Cosner TR:9:10-25. [6]

On September 13, 2019, Appellant entered into a Settlement Agreement (the "First Settlement Agreement") with the City, releasing all claims against the City from the beginning of the world through the date of the First Settlement Agreement, and agreeing to dismiss the 2018 Charge. *See* DE 69 ¶ 7; DE 69-7.

### The 2020 Internal Affairs Investigation Against Appellant

On April 23, 2020, Internal Affairs ("IA") at the City of Miami Beach received an Allegation of Employee of Misconduct regarding Appellant. *See* DE 69, ¶ 9; DE 69-8 ¶¶ 13, 36-37; *see also* Exh. B to DE 69-8.

On May 4, 2020, IA notified Appellant that she was under investigation in IA Case No. 2020-010 (the "IA Case"). *See* DE 69 ¶ 10; DE 69-8 ¶ 14; *see also* Exh. B to DE 69-8. Lieutenant Cosner was not involved in the IA Case. *See* DE 69 ¶ 11; DE 69-8 ¶ 31; *see also* Exh. B to DE 69-8; DE 69-6 Cosner TR:147:1-3.

---

[6]   In citing to deposition transcripts generally, the City uses the citation format "TR:_:_." The "TR" refers to "transcript," the first number(s) after the TR refers to the page number(s) of the transcript and the second number(s) refers to the line number(s) of the transcript. Additionally, the City identifies the specific deponent by using their last name before the "TR."

### Appellant's 2020 EEOC Charge of Discrimination

On July 13, 2020, after she was placed under investigation by IA, Appellant filed her second EEOC Charge, EEOC Charge No. 510-2020-04794 ("2020 Charge"). *See* DE 69 ¶ 12; DE 69-9. The 2020 Charge does not mention Lieutenant Cosner. *See id*.

### The November 2020 Meeting and Settlement Discussions

On November 2, 2020, there was a confidential settlement meeting between Appellant, the Fraternal Order of Police, Lodge 8 ("FOP") and the City (the "November Meeting"). *See* DE 69 ¶ 15; *see also* DE 69-8 ¶¶ 16-17; DE 69-10 ¶¶ 15-16; DE 69-11 ¶¶ 18-19; DE 69-12 Pancier TR:9-11:15-3; DE 69-13 Gibbons TR:12-14:13-1; 17:15-23; DE 69-14 Millan TR:25-27:12-9.[7]

Critically, during the November Meeting, Appellant was represented by two lawyers: (1) Michael Pancier, Esq.; and (2) Eugene Gibbons, Esq. Additionally, Appellant was represented by then-FOP President, Kevin Millan. *See* DE 69 ¶ 16; DE 69-8 ¶ 21; DE 69-10 ¶ 20; DE 69-11 ¶ 23; DE 69-12 Pancier TR:9-10:15-9; DE 69-13 Gibbons TR:10-14:7-1; DE 69-14, Millan TR:25-27:1-9; 30:1-6.

The purpose of the November Meeting was to attempt to settle the IA Case and the 2020 Charge. *See* DE 69 ¶ 17; DE 69-8, ¶ 20; DE 69-10 ¶ 19; DE 69-11 ¶

---

[7]    DE 69-10, DE 69-11, DE 69-12, DE 69-13, and DE 69-14 are all in the City's Supplemental Appendix.

22; DE 69-12 Pancier TR:13-15:5-10 (*see also* Exh. 3 to DE 69-12); DE 69-13, Gibbons TR:12-13:13-9; DE 69-14, Millan TR:25-26:12-20. During the November Meeting, the City showed Appellant, her two lawyers, and the FOP President a power point presentation detailing the allegations against Appellant and her then-boyfriend Police Officer Nicholas Guasto ("N. Guasto"). *See* DE 69 ¶¶ 20-22; DE 69-8 ¶ 26, *see also* Exh. A to DE 69-8; DE 69-12, Pancier TR:11-12:25-8.

After the November Meeting, settlement discussions took place between the City and Appellant's two attorneys. DE 69 ¶ 23; DE 69-8 ¶ 35; DE 69-10, ¶ 28; DE 69-11, ¶ 31; DE 69-12, Pancier TR:18-19:24-13; DE 69-14, Millan TR:28-30:23-6.

### *The Settlement Agreement and the Last Chance Agreement*

On or about December 18, 2023, Appellant, the FOP, and the City entered into a Settlement Agreement and a Last Chance Agreement. *See* DE 69 ¶ 24; DE 71-4. As part of the Last Chance Agreement, Appellant executed an Irrevocable Letter of Resignation ("Resignation"). *See* DE 71-4, p. 8, ¶ 9.

In entering into the Settlement Agreement and the Last Chance Agreement, Appellant was represented by two lawyers and the FOP President. *See* DE 69 ¶ 25; DE 69-8 ¶¶ 38-42; DE 69-10 ¶¶ 29-34; DE 69-11 ¶¶ 32-36; DE 69-12 Pancier TR:7-9:8-14; De 69-13 Gibbons TR:10-12:5-12; DE 69-14 Millan TR:30-31:7-12; 36-38:6-24; DE 69-16, Clements TR:130-131:25-24; 143:14-20.

6

Appellant voluntarily entered into the Settlement Agreement and the Last Chance Agreement. The City did not "put" Appellant on the Last Chance Agreement or force her to sign anything. *See* DE 69 ¶ 26; DE 69-8 ¶¶ 40-42; DE 69-10 ¶¶ 32-34; DE 69-11 ¶¶ 34-36; DE 69-12, Pancier TR:19:5-18; DE 69-13 Gibbons TR:12:3-12; DE 69-14 Millan TR:38:11-24; DE 69-16 Clements TR:131:2-24.

The Last Chance Agreement made Appellant an employee at will. *See* DE 1, ¶P 27, 41; DE 32, p. 4; DE 69-8 ¶ 43; DE 69-10 ¶ 35; DE 69-11 ¶ 37.

As part of the Settlement Agreement Appellant: (1) accepted a one hundred and sixty (160) hour suspension; (2) paid the City $3,531.20; and (3) "admits that she committed the misconduct in association with IA Case Number 2020-010 and was in violation of numerous City and Police Department policies and the City Personnel Rules for Classified Service." *See* DE 69 ¶¶ 28-29; DE 71-4.

The Last Chance Agreement specifically references the IA Case. *See* DE 69 ¶ 30; DE 69-8 ¶ 44; 69-10 ¶ 36; DE 69-11 ¶ 38; DE 71-4. The Last Chance Agreement does not reference the 2020 Charge (because the 2020 Charge was not the basis for the Last Chance Agreement), any future performance of Appellant, or any future discipline pursuant to the Last Chance Agreement. So, it was specifically omitted from reference in the Last Chance Agreement. *See* DE 69 ¶ 31; DE 69-8 ¶ 45; DE 69-10 ¶¶ 30, 37; DE 69-11, ¶ 39; DE 69-16, Clements TR:79-80:12-1; 146-147:7-2; DE 71-4.

### Last Chance Agreements In General At the City

During Appellant's employment with the City, last chance agreements were not rare. *See* DE 69 ¶ 71; DE 69-10, ¶ 59; DE 69-30 ¶¶ 43-44. Between 2015 – 2024, there were forty-two (42) last chance agreements at the City. *See* DE 69 ¶ 71; DE 69-30 ¶¶ 45-47, *see also* Exh. C to DE 69-30. The City frequently proposes/uses last chance agreements, which are always the product of negotiation between the City, the employee, and the employee's union. The City cannot unilaterally "impose" last chance agreements. *See* DE 69 ¶ 72; DE 69-10 ¶¶ 55-56, 58, 60; DE 69-30, ¶¶ 40-42, 44.

### The Relationship Between Appellant and Lieutenant Cosner

In approximately 2014, Appellant and Lieutenant Cosner, who was at that time the rank of Police Officer and then Sergeant, spent time together outside of work. *See* DE 69 ¶ 32; DE 69-6 Cosner TR:20-21:18-17. In 2014 and 2015 Lieutenant Cosner and Appellant went to lunch together, and Appellant introduced him to her parents and grandparents as a friend. Additionally, they would text each other for hours. *See* DE 69 ¶¶ 33-36; DE 69-6 Cosner TR:23-24:20-5, TR:24:3-11, TR:33:10-16, TR:24-25:18-9.

Cosner and Appellant had a flirtatious relationship that culminated in the two having sex on two occasions both occurring in approximately mid-2014. *See* DE 84

8

¶¶ 87, 90[8]; DE 69-6 Cosner TR:21-23:2-19. In 2014-2015, Appellant would text Cosner that she loved and missed him. *See* DE 84 ¶¶ 87, 90; DE 69-6 Cosner TR:24-25:6-9. Appellant never complained to Cosner about the card (as referenced at DE App. 18 p. 13) or anything that he did regarding her. *See* DE 84 ¶¶ 87, 90; DE 69-6 Cosner TR35:2-24.

The relationship between Appellant and Lieutenant Cosner ended in approximately 2015. Other than a work-related request from Lieutenant Cosner to Appellant for Appellant to approve an arrest form in 2017, Appellant and Lieutenant Cosner had no other interactions and ignored each other from the end of the relationship through December 2020. *See* DE 69 ¶¶ 37-39; DE 69-6 Cosner TR:32:12-15; 85:7-11; DE 69-17 Appellant Vol. I TR:73-74:15-9.

### *Lieutenant Cosner's Allegations of Employee Misconduct Against Appellant*

On or about January 8, 2021, Lieutenant Cosner submitted via email an Administrative Action Form ("AAF") to then-Internal Affairs Commander A.J. Prieto ("Commander Prieto"). *See* DE 69 ¶ 40; DE 69-8 ¶ 47, Exh. D to DE 69-8; DE 69-18.[9]

In making his allegations against Appellant, Lieutenant Cosner used the wrong form. He should have used an "Allegation of Employee Misconduct" form

---

[8]    DE 84 is in the City's Supplemental Appendix.
[9]    DE 69-18 is in the City's Supplemental Appendix.

(an "AEM"). *See* DE 69 ¶ 42; DE 69-8 ¶¶ 48-49. The fact that Lieutenant Cosner used the incorrect form has no bearing on the veracity of his allegations against Appellant, and it appeared his choice of form was merely an administrative mistake. *See* DE 69 ¶ 43; DE 69-8 ¶ 51. The fact Lieutenant Cosner did not sign the AAF is equally immaterial. There was no question Lieutenant Cosner was the one who filled out the AAF. *See* DE 69 ¶ 44; DE 69-8 ¶¶ 51-52. The City corrected the form error and put Lieutenant Cosner's allegations against Appellant on an AEM. *See* DE 69 ¶ 45; DE 69-8 ¶¶ 54-55; DE 69-19.[10] The allegations on the AAF and the AEM are identical. The City merely corrected a paperwork error. *See* DE 69 ¶ 46; DE 69-8 ¶ 57.

The AEM is not signed. *See* DE 69-19. The fact the AEM is not signed does not impact the validity of the allegations contained therein. The AEM does not necessarily have to be signed; it has "happened where the officer was unable to sign it." *See* DE 69 ¶¶ 47-48; DE 69-16 Clements TR:134:4-12; DE 69-20 Flaherty TR:47-48:18-6; 49:11-17.[11]

Essentially, Lieutenant Cosner alleged that Appellant was not in her assigned area when she was supposed to be, that she failed to give out certain assignments to

---

[10]    DE 69-19 is in the City's Supplemental Appendix.

[11]    DE 69-20 is in the City's Supplemental Appendix.

subordinate officers, and then lied to Lieutenant Cosner (her supervisor that evening) about giving out the assignments. *See* DE 69 ¶ 49; DE 69-19.

Critically, at the time Lieutenant Cosner submitted the AAF, i.e. made his allegations against Appellant, he was not aware of: (1) the 2018 Charge; (2) the 2020 Charge; (3) the fact Appellant signed a Settlement Agreement and Last Chance Agreement in December 2020; and (4) the fact Appellant was on a Last Chance Agreement. *See* DE 69 ¶ 50; DE 69-6 Cosner TR:40:5-14; 40-41:21-2; 41-42:23-5; 146-147:18-10; DE 69-21, p. 8 responses to Request No. 34.[12] There is no evidence in the record that Cosner knew about Appellant's 2020 EEOC Charge or her Last Chance Agreement. *See* DE 69 ¶ 51; DE 69-17 Appellant Vol. I TR:109-111:7-18.

### *The January 19, 2021, Meeting*

In January 2021, Lieutenant Cosner notified Chief Clements about the allegations against Appellant. Because Appellant was on a Last Chance Agreement, and thus an employee at will, Chief Clements could have implemented Appellant's Resignation without speaking to Appellant based on Lieutenant Cosner's allegations. *See* DE 69 ¶ 52; DE 1 ¶ 27; DE 69-8 ¶ 43; DE 69-10 ¶¶ 35, 38-43; DE 69-11 ¶¶ 37, 41; DE 69-16 Clements TR:96:1-7; 98-99:25-1; DE 69-20 Flaherty TR:31:8-14; 32:3-5; 40:1-6.

---

[12]    DE 69-21 is in the City's Supplemental Appendix.

Although he did not have to, on January 19, 2021, Chief Clements held a meeting with Appellant and the following individuals: (1) Wayne Jones (then Assistant Chief of Police); (2) Lieutenant Paul Ozaeta (then President of the FOP); (3) Sergeant Arley Flaherty (then FOP First Vice President); (4) Sergeant Reggie Lester (then FOP Second Vice President); (5) then-Lieutenant Delvin Brown (then FOP Grievance Chairman); (6) Commander A.J. Prieto (then Commander of IA); and (7) Lieutenant Steven Cosner. *See* DE 69 ¶ 53; DE 69-8 Exh. 8, ¶ 58; DE 69-11, ¶ 44; DE 69-16, Clements TR:93:8-18;  DE 69-22[13] Appellant Vol. II TR:152:13-20; 154:1-10; DE 69-20 Flaherty TR:34:13-24; 40:1-6. Chief Clements held the meeting so Appellant could address her concerns and to determine if there was something the City hadn't considered. *See* DE 69 ¶ 54; DE 69-6 Clements TR:96:5-7; 96:15-19; 97:1-10; 98-99:22-3; 146:1-5; DE 69-10 ¶ 44; DE 69-11 ¶ 43.

At the meeting, Appellant was represented by the FOP's entire Executive Board, i.e. her union's entire leadership. *See* DE 55; DE 69-6 Cosner TR:45:15-20; DE 69-8, ¶¶ 58, 61-63; DE 69-11, ¶¶ 44, 47-48; DE 69-16, Clements TR:93:6-18; DE 69-20, Flaherty TR:27-28:24-19; 34:13-21; 35:21-23; 37:15-20; DE 69-23 Ozaeta TR:16:5-16.

At no point during the meeting did Appellant or any of Appellant's four (4) union representatives request an attorney be present, allege the City was violating

---

[13]    DE 69-22 is in the City's Supplemental Appendix.

Florida Statute § 112.532, or invoke the provisions of Florida Statute § 112.534. *See* DE 69 ¶ 56; DE 69-8 ¶¶ 59, 61-65; DE 69-11 ¶¶ 45, 47-50; DE 69-16 Clements TR:93:19-24; 144-145:13-8; DE 69-20 Flaherty Dep. TR:35-36:24-1; 39-41:2-3; DE 69-23 Ozaeta TR:36-37:12-14; 49:20-24; 67:23-25; DE 69-24, Lester TR:46:8-14.

Had Appellant or any of her representatives requested an attorney, invoked the provisions of Florida Statute § 112.534, or even implied that there was something improper about the January 19, 2021 meeting the meeting would have been stopped. *See* DE 69 ¶ 58; DE 69-8 ¶¶ 60, 66; De 69-11, ¶ 46; DE 69-16, Clements TR:144:13-24; DE 69-20, Flaherty TR:39-41:2-3.

At the January 19, 2021 meeting, Appellant stated the reason she was at the main police station so long during her December 27-28, 2020 shift was because she was working on Officer Stella's evaluation. *See* DE 69 ¶ 59; DE 69-8 ¶ 70. However, based on information provided by the City's IT Department, Officer Stella's evaluation was not even created on Appellant's computer until January 10, 2021, which was after Appellant's December 27-28, 2020 shift. *See* DE 69 ¶ 60; DE 69-8 ¶ 71. Commander Prieto documented the foregoing in an email that he sent to Chief Clements on January 25, 2021. *See* DE 69 ¶ 61; DE 69-8 ¶ 72; *see also* DE 69-25.[14] Additionally, Commander Prieto prepared a PowerPoint regarding his findings as to

---

[14]    DE 69-25 is in the City's Supplemental Appendix.

the overall allegations against Appellant, which he provided to Chief Clements. *See* DE 69 ¶ 62; DE 69-8 ¶¶ 73-74, *see also* DE 69-26.[15]

Finally, President Ozaeta re-affirmed that: (1) the union and its attorney reviewed and blessed Appellant's Settlement Agreement and Last Chance Agreement; (2) because of the Last Chance Agreement, Chief Clements could have implemented the Resignation without having the January 2021 meeting; (3) Chief Clements held the meeting as a courtesy because he wanted to hear what Appellant had to say; and (4) because of the Last Chance Agreement, the City did not have to conduct an investigation into the allegations against Appellant. *See* DE 69 ¶ 57; DE 69-23 Ozaeta TR:19-21:7-10; 28-30:5-1; 31-32:5-3; 41:10-12; 48:13-22; 48-49:23-1; 65:12-19; 67:13-19; 70:8-11; 70:12-14.

### *Implementing Appellant's Resignation*

On January 25, 2021, Chief Clements, who was the decision-maker, implemented Appellant's Resignation. *See* DE 69 ¶ 63; DE 69-27; 69-28[16] p. 6, answer to Rog No. 4; *See also* DE 69-6 Cosner TR:42-43:19-2; DE 69-8, ¶ 75; DE 69-10 ¶ 45; DE 69-11 ¶ 51; DE 69-16, Clements TR:98-99:22-3; 99-100:16-1. The reasons for implementing Appellant's Resignation are detailed in DE 69-27, which also accurately memorializes what happened at the January 19, 2021 meeting. *See*

---

[15]    DE 69-26 is in the City's Supplemental Appendix.
[16]    DE 69-27 and DE 69-28 are in the City's Supplemental Appendix.

DE 69 ¶ 64; DE 69-8 ¶¶ 78-79; DE 69-10 ¶ 48; DE 69-11 ¶¶ 54-55; DE 69-16 Clements TR:97-98:1-4; DE 69-28 p. 6, answer to Rog No. 4.

In implementing Appellant's Resignation, Chief Clements did not: (1) consult with Lieutenant Cosner; and/or (2) consider Appellant's 2020 Charge or any complaints of harassment. Lieutenant Cosner was not a decision-maker. *See* DE 69 ¶¶ 65-66; DE 69-6 Cosner TR:17:3-5; 42-43:19-2; 43:13-15; 147:11-24; DE 69-8, ¶¶ 76-78, 81-82; DE 69-10, ¶¶ 46-49, 51-52; DE 69- 11, ¶¶ 52-54, 56; DE 69-16 Clements TR:99-100:16-1, 146-147:11-2; DE 69-20 Flaherty TR:43:1-24, 45-46:22- 1; DE 69-23 Ozaeta TR:43-44:10-9.

### *The Decision to Implement Appellant's Resignation Is Not Reviewable and Her Own Union Did Not Challenge Implementation of Her Resignation*

Pursuant to paragraph 4 of the Last Chance Agreement, Chief Clements' decision is not subject to review or explanation. *See* DE 69 ¶ 67; DE 71-4, p. 6 ¶ 4. Paragraph eleven (11) of the Last Chance Agreement states if Appellant commits any of the violations referenced in paragraph four (4), "her resignation shall be effective, without the right to grieve or otherwise contest, in any manner, her separation. *See* DE 69 ¶ 68; DE 71-4, p. 8 ¶ 11. Paragraph twelve (12) of the Last Chance Agreement states that if Appellant is separated pursuant to the Last Chance Agreement, she further waives the right to challenge or appeal her separation pursuant to any administrative or statutory avenue that may exist. *See* DE 69 ¶ 69; DE 71-4, p. 8 ¶ 12.

15

Importantly, the FOP (Appellant's Union) did not challenge implementation of her Resignation because there was no basis to do so. *See* DE 69 ¶ 70; DE 69-13 Gibbons TR:23:1-13; DE 69-20 Flaherty TR:44-45:3-21; DE 69-23, Ozaeta TR:44-45:1-21, 50:14-22, 56:15-17.

### The Testimony of Nicholas Guasto ("N. Guasto")

N. Guasto is now Appellant's ex-husband and currently a Police Officer with the City. *See* DE 69 ¶ 73; DE 69-31[17] N. Guasto TR:7-8:19-3, 9:4-15. Chief Clements never told N. Guasto that he was going to fire Appellant because of her 2020 Charge. *See* DE 69 ¶ 74; DE 69-31 N. Guasto TR:58:10-19; 63:9-14. Chief Clements wanted resolution of the 2020 Charge that included dismissal of the 2020 Charge and that's what ultimately happened. *See* DE 69 ¶ 75; DE 69-31 N. Guasto TR:58-59:20-4. N. Guasto never had any conversation with Chief Clements or any other decision-maker at the City about Appellant after she entered into her December 2020 Settlement Agreement and Last Chance Agreement. *See* DE 69 ¶ 76; DE 69-31 N. Guasto TR:59:5-9. N. Guasto was not involved, in any way, in the decision to implement Appellant's Resignation. He does not have firsthand knowledge of why the City implemented Appellant's Resignation. *See* DE 69 ¶ 77; DE 69-31 N. Guasto TR:63:3-8; 63-64:23-1.

---

[17]    DE 69-31 is in the City's Supplemental Appendix.

***Appellant's Protected Activity and Connection to Cosner's Allegations***

Appellant's protected activity is her 2020 Charge, which as with all her other EEOC Charges, makes no mention of Lieutenant Cosner. *See* DE 69 ¶ 78; DE 69-17 Appellant Vol. I TR:105-107:8-22; DE 69-22 Appellant Vol II TR:148-149:4-6; DE 69-32 Appellant Vol. III TR:184-186:23-3.

On June 22, 2021, Appellant filed her third EEOC Charge ("2021 Charge"). *See* DE 69 ¶ 79; DE 1-1. When asked to connect her 2020 Charge with her January 2021 termination, Appellant testified: "Okay. So I know that I filed a EEOC charge. And then, I was retaliated against for filing that EEOC charge. And then, I was retaliated against for filing that EEOC --EEOC charge. And then, I suffered an adverse employment action by being terminated for filing that EEOC charge." *See* DE 69 ¶ 81; DE 69-32 Appellant Vol. III TR:221-222:14-9.

When asked to clarify, Appellant testified: "by being falsely accused of these allegations that led to this adverse employment action. And I was terminated." When asked to clarify again, [Appellant] testified: "I -- I don't understand your question. I -- all I know is that the way I answered it, that's my answer. And that's as good of an answer that I have right now. I'm sorry." *See* DE 69 ¶ 82; DE 69-32 Appellant Vol. III TR:222-223:10-7.

The alleged false allegations to which Appellant is referring are the allegations from Lieutenant Cosner. *See* DE 69 ¶ 83; DE 1, ¶¶ 42-45; DE 1-1, p. 2; DE 69-32

17

Appellant Vol. III TR:187-189:3-2. Critically, in claiming that the allegations from Lieutenant Cosner were false, Appellant testified that as to most of the allegations, she does not know if they are false, and she did not do any investigation into such prior to filing her lawsuit. *See* DE 69 ¶ 84; DE 69-32 Appellant Vol. III TR:189-203:11-14; 207-213:12-20.

When asked "[b]ut sitting here today after you filed your lawsuit in federal court claiming it's all false, you don't know?" Appellant testified: "I don't' know." *See* DE 69 ¶ 85; DE 69-32 Appellant Vol. III TR:213:17-20.

## SUMMARY OF THE ARGUMENT

Appellant incorrectly asks this Court to review the District Court's decision based on what a reasonable juror could conclude. Appellant waived her right to a trial by jury. *See* DE 40. Therefore, the District Court is the trier of fact. *See* DE 108, pp. 12-13. As such, analysis of what a reasonable juror might conclude has no place for consideration in this Appeal. Since Appellant's entire argument is incorrectly based on what a reasonable juror could conclude, this Court should disregard Appellant's arguments and affirm the District Court.

Additionally, this Court should affirm the District Court because Appellant raises multiple arguments for the first time on appeal. Since these arguments were not raised below, and therefore not considered or ruled on by the District Court, this Court should not consider them for the first time here and affirm the District Court.

18

Finally, as is detailed more fully below, there are no genuine issues of material fact from which a reasonable trier of fact (in this case the District Court) could find in favor of Appellant. Appellant's remaining arguments are based on speculation and supposition. Accordingly, this Court should affirm the District Court.

## STANDARD OF REVIEW

This Court reviews "de novo the grant of summary judgment, applying the same legal standard used by the district court." *Mullin v. Secretary, U.S. Department of Veteran Affairs*, 149 F.4th 1244, 1250 (11th Cir. 2025) (*citing Taxinet Corp. v. Leon*, 114 F.4th 1212, 1230 (11th Cir. 2024)). "Under Rule 56, summary judgment is warranted 'when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and compels judgment as a matter of law in favor of the moving party.'" *Mullin*, 149 F.4th at 1250 (*citing Williams v. Radford*, 64 F.4th 1185, 1188 (11th Cir. 2023)).

## ARGUMENT AND CITATION OF AUTHORITY

**I.    THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING THE CITY'S MOTION FOR FINAL SUMMARY JUDGMENT BECAUSE APPELLANT INCORRECTLY ARGUES THAT THE ISSUE ON APPEAL IS WHAT A REASONABLE JUROR COULD CONCLUDE.**

The Eleventh Circuit has held that when, as in this case:

> decision is to be reached by the court, and there are no issues of witness credibility, the court may conclude on the basis of the affidavits, depositions, and stipulations before it, that there are no genuine issues of material fact, even

19

though decision may depend on inferences to be drawn from what has been incontrovertibly proved.... A trial on the merits would reveal no additional data.... The judge, as trier of fact, is in a position to and ought to draw his inferences without resort to the expense of trial....

*Coats & Clark, Inc. v. Gary*, 755 F.2d 1506, 1509-10 (11th Cir. 1985) (*citing Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1123-25 (5th Cir. 1978)).

In a non-jury setting, like this case where the District Court is the trier of fact, and "there are 'no issues of witness credibility,' the Court may make factual determinations and draw inferences at the summary judgment stage based on the affidavits, depositions and other evidence in the record, because '[a] trial on the merits would reveal no additional data' nor 'aid the determination.'" *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1251 (11th Cir. 2016) (*quoting Nunez*, 572 F.2d at 1123–24).

In bench trials, the judge serves as the sole factfinder and weighs the evidence, evaluates the credibility of witnesses, and decides questions of fact and issues of law. *See Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993) (holding that "it is the exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony").

Appellant incorrectly urges this Court to review the District Court's ruling by considering what a reasonable juror/jury might conclude. *See* DE App. 18 pp. 5, 11, 29, 30, 32, 33, 36, 42. This is incorrect. Appellant waived her right to a

20

jury trial. *See* DE 40. Therefore, analysis of what a reasonable juror might conclude has no place for consideration in this Appeal.

The District Court expressly addressed this issue in its Order on Defendant's Motion for Summary Judgment [DE 108]. Specifically, the District Court acknowledged that: (1) the case was proceeding as non-jury; (2) a more relaxed standard for summary judgment applied in a non-jury case; and (3) the judge, not a jury, serves as the sole factfinder. *See* DE 108, pp. 12-13.

Given the stipulation to a non-jury trial [DE 40] and the District Court's express acknowledgement of such in the Order from which Appellant appeals, there is no basis for Appellant's argument that this Court analyze this case under what a reasonable juror/jury might conclude. Since Appellant's entire argument is based on the incorrect premise that Appellant is entitled to a trial by jury, this Court should affirm the decision of the District Court.

II.     **THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING THE CITY'S MOTION FOR FINAL SUMMARY JUDGMENT BECAUSE THE MAJORITY OF THE ISSUES/ARGUMENTS APPELLANT RAISES ON APPEAL WERE NOT PRESERVED.**

This Court's rule is "'that an issue not raised in the district court and raised for the first time in an appeal will not be considered by this [C]ourt.'" *McCreight v. Auburnbank*, 117 F.4th 1322, 1346 (11th Cir. 2024) (*citing Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004)); *see also XU v. Porsche Cars*

*North America, Inc.*, Case No. 23-10585, 2023 WL 7295228, at *1 (11 Cir. Nov. 6, 2023) (*citing Access Now, Inc.*, 385 F.3d at 1331); *Walker v. Jones,* 10 F.3d 1569, 1572 (11th Cir. 1994).

"The corollary of this rule is that, if a party hopes to preserve a claim, issue, *theory*, or defense on appeal, she must first clearly present it to the district court, that is, 'in such a way as to afford the district court an opportunity to recognize and rule on it.'" *McCreight*, 117 F.4th 1346-47 (*citing  Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012)) (emphasis added); *see also XU*, 2023 WL 7295228, at *1 (stating "'if a party hopes to preserve a claim, *argument*, *theory*, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.'") (emphasis added) (*citing In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990)).

In arguing that there is sufficient evidence of pretext to overturn the District Court's decision, Appellant raises two primary arguments on appeal that she did not preserve: (1) that Chief Clements engaged in a misinformation campaign; and (2) that the City has never conditioned a last chance agreement on an employee releasing an EEOC charge other than as to Appellant.

22

Importantly, the District Court outlined the entirety of Appellant's arguments relating to pretext, stating:

> [Appellant] argues that the City's reason for implementing her resignation constitutes pretext because (1) she and the City would not have entered into the LCA if she had not filed her Second EEOC Charge, (2) the City intentionally forced Guasto to be supervised by Cosner, with whom she had a tenuous history and, therefore, had not interacted for several years, and (3) the City violated its own policies and procedures in relying on purportedly fabricated and false allegations contained in Cosner's AAF.

*See* DE 108 p. 22.

The issues addressed by the District Court are the issues on pretext that are preserved for appeal. They do not include the new arguments/theories that Appellant raise for this first time on appeal.

### A.    The Argument/Theory That Chief Clements Engaged in a Misinformation Campaign Is Not Preserved For Appeal.

Appellant's primary theory, which she argues for the first time on appeal, is that she only entered into the Settlement Agreement and Last Chance Agreement [DE 71-4] because of Chief Clements':

> elaborate misinformation scheme designed to give all lawyers involved the impression that (1) Ms. Salabarria herself had come up with the idea of dropping her EEOC charge in exchange for dismissal of her IA complaint and creation of the LCA, and (2) that Chief Clements had not had backchannel communication with Ms. Salabarria (through third parties) about her EEOC charge.

*See* DE App. 18 p. 35.

This new argument/theory is the central theme of nearly every one of Appellant's arguments. *See* DE App. 18 pp. 15, 30, 41, 42, 43 fn. 9.

Appellant never argued to the District Court that Chief Clements engaged in an alleged "misinformation scheme" designed to dupe all the lawyers into believing that Appellant had come up with the idea of dropping her 2020 Charge. *See* DE 108 p. 22. A review of the record bears this out.

First, the District Court did not rule on this argument/theory because Appellant did not raise it in her Response In Opposition to Defendant's Motion for Summary Judgment ("Response to Summary Judgment"). *See* DE 79; *see generally* DE 108.

Second, Appellant did not raise this argument/theory in the depositions of Eugene Gibbons, Esq. and Michael Pancier, Esq., Appellant's lawyers who represented her regarding the Settlement Agreement and Last Chance Agreement [DE 71-4]. *See generally* DE 69-12; 69-13.

Third, Appellant did not raise this argument/theory in her Complaint. *See* DE 1.

Finally, Appellant did not raise this argument/theory in her or Chief Clements' depositions. *See generally* DE 69-16; 69-17; 69-22; 69-32.

Appellant is aware that she is raising this argument/theory for the first time on appeal. Specifically, Appellant argues:

24

> Appellate preservation note: Ms. Salabarria's trial counsel relied on Chief Clements' misinformation scheme as evidence of pretext, but used different nomenclature when describing those events, like "Clements' threatening statements" and Clements "using third party individuals." DE 79 p. 19. This is a stylistic difference in nomenclature, not a substantive difference in legal argument.

*See* DE App. 18 p. 43 fn. 9.

Appellant's argument in this regard strains reason. Nowhere in her Response to Summary Judgment [DE 79] does Appellant argue that Chief Clements engaged in a "misinformation scheme." Moreover, Appellant never argues that said "misinformation scheme" was elaborately designed to dupe Appellant's lawyers.

On page nineteen (19) of her Response to Summary Judgment [DE 79] Appellant argues that Chief Clements' allegedly threatening statements to N. Guasto and Chief Clements' alleged use of third parties to communicate with N. Guasto are evidence, at most, of "suspicious intent." *See* DE 79, p. 19. Appellant does not come close to arguing this new theory that Chief Clements engaged in an elaborate "misinformation scheme," let alone one directed at Appellant's lawyers who negotiated her Settlement Agreement and Last Chance Agreement. Appellant's characterization of the difference as merely a "stylistic difference in nomenclature" is without merit.

In short, the argument/theory that Chief Clements engaged in a "misinformation scheme" is a new argument/theory that Appellant raises for the first

time on appeal. The District Court never ruled on or considered this new argument/theory. Therefore, it is not preserved for appeal and this Court should not consider it. *See McCreight*, 117 F.4th 1346-47.

**B.      The Argument/Theory that the City Has Never Conditioned a Last Chance Agreement on an Employee Releasing an EEOC Charge Is Not Preserved for Appeal.**

In arguing that the City's alleged deviation from protocol is evidence of pretext, Appellant falsely asserts that she "is the only person with whom the City has ***ever*** conditioned dismissal of an IA Investigation on an employee dropping EEOC Charges." *See* DE App. 18 pp.43-44 (emphasis added).

This is a new argument/theory that Appellant raises for the first time on appeal. *See McCreight*, 117 F.4th 1346-47. Appellant never argues to the District Court that she is the only employee that the City ever conditioned dismissal of an IA Investigation on dropping "EEOC Charges." *See* DE 1; DE 79.

To that end, the District Court did not address this argument/theory because Appellant did not raise it in her Response to Summary Judgment. *See* DE 79, 108. Therefore, the District Court never ruled on or considered this new argument/theory. Accordingly, it is not preserved for appeal and this Court should not consider it. *See McCreight*, 117 F.4th 1346-47.

Appellant is aware that she is raising this argument/theory for the first time on appeal. Specifically, Appellant argues:

26

> Appellate preservation note: Ms. Salabarria's trial counsel argued that the conditioning of the LCA/Settlement on dismissal of the EEOC charge was evidence of pretext, even if the affidavit from the City's HR Director was not relied upon. DE 79 p. 19.

*See* DE App. 18 p. 44 fn 10.

Appellant's argument in this regard likewise strains reason. As stated above, Appellant never argued to the District Court that she is the only employee that the City ever conditioned dismissal of an IA Investigation on dropping "EEOC Charges." *See* DE 1; DE 79. Consequently, the District Court did not address this argument/theory. Thus, it is not preserved for appeal, and this Court should not consider it. *See McCreight*, 117 F.4th 1346-47.

That said, if this Court does consider this new argument/theory (which it should not), it is wholly unsupported. This new argument/theory relies soley on the Declaration of Marla Alpizar, the City's Director of Human Resources ("Director Alpizar").[18] *See* DE App. 18, pp. 43-44; DE 69-30.

Therein, Director Alpizar states, among other things, that last chance agreements are not rare, and that all last chance agreements are the product of negotiation between the City, the employee, and the employee's union. *See* DE 69-30, ¶¶ 40-43.

---

[18]    Appellant incorrectly states that Director Alpizar submitted an affidavit. *See* DE App. 18, p. 44. Director Alpizar submitted a Declaration.

As part of her Declaration, Director Alpizar provided a chart showing non-active and active last chance agreements for the time-period 2015-2024 (the "Chart"). *See* DE 69-30 Exh. C, pp. 86-87. The Chart does not provide any information about the negotiation process for any of the listed last chance agreements.

Appellant has no evidence to support her claim that she is the only employee the City has ***ever*** conditioned dismissal of an IA Investigation on dropping "EEOC Charges." Director Alpizar's Declaration only covers last chance agreements from 2015 -2024. Thus, Appellant cannot credibly claim that she is the only employee the City has ***ever*** conditioned dismissal of an IA Investigation on dropping "EEOC Charges."

Additionally, there is no evidence in Director Alpizar's Declaration, or anywhere else in the record, about the negotiation process of the listed last chance agreements. Appellant's claim in this regard is nothing more than improper belated speculation. There is no evidentiary support. Therefore, the Court should not consider this argument.

28

**III.    THIS COURT SHOULD AFFIRM THE DISTRICT COURT'S ORDER GRANTING THE CITY'S MOTION FOR FINAL SUMMARY JUDGMENT BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT FROM WHICH A REASONABLE FACT FINDER COULD FIND IN FAVOR OF APPELLANT.**

The only properly preserved issue on appeal is whether there is sufficient evidence of pretext that a reasonable factfinder, in this case the District Court, could conclude that Appellant's protected activity was the but-for cause of the adverse action. *See Univ. of Texas Sw. Med. Ctr. V. Nassar*, 870 U.S. 338, 360 (2013); *see also Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007).

In evaluating pretext, this Court asks, "whether the [Appellant] has cast sufficient doubt on the [Appellee's] proffered non[-retaliatory] reasons to permit a reasonable factfinder to conclude that the employer's proffered legitimate reasons were not what actually motivated its conduct." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citation and internal quotation marks omitted).

As long as the proffered reason is one that might motivate a reasonable employer, "an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." *Chapman v. AI Transp.*, 229 F.3d 1012, 1030 (11th Cir. 2000) (en banc).

**A.　　Appellant Incorrectly Argues that the City Conditioned Dismissal of Her 2020 Charge On Entering into the Last Chance Agreement.**

In trying to connect the Last Chance Agreement to her 2020 Charge, Appellant relies on *Baskerville v. Secretary of Department of Veteran Affairs*, Case No. 6:18-cv-1728-WWB-DCI, 2021 WL 1338203 (M.D. Fla. Feb. 8, 2021). The District Court correctly held that *Baskerville* does not apply. *See* DE 108 p. 23.

In *Baskerville*, plaintiff filed various EEOC charges against defendant. *See Baskerville*, 2021 WL 1338203, at \*1. Between 2015 and 2017, plaintiff had disciplinary issues that subjected plaintiff to possible termination. *See id*. The defendant offered plaintiff a last chance agreement without discussing it with him. *See id*. "Plaintiff declined to sign the Last Chance Agreement offered by [defendant] and was ultimately terminated … for misconduct arising from the 2017 incidents." *See id*. at \*2. The defendant admitted that "it 'offered [p]laintiff [the] [l]ast [c]hance [a]greement, conditioned upon him dismissing all of his existing EEOC charges.'" *See id*. What Appellant conveniently leaves out in her analysis of *Baskerville*, is that in denying summary judgment, defendant's admission that it offered the last chance agreement conditioned on dismissal of the existing EEOC charges was critical. *See id*. at \*3. There is no such admission in this case.

*Baskerville* is premised on facts that do not exist in this case. First, Appellant's Last Chance Agreement was negotiated by her *two* lawyers and the Union President. Second, Appellant signed a Settlement Agreement, agreeing to withdraw her 2020

Charge. Third, Appellant voluntarily signed the Last Chance Agreement. Fourth, the

Last Chance Agreement is not premised on Appellant withdrawing her 2020 Charge.

Fifth, there is no admission from the City that the Last Chance Agreement was

conditioned on Appellant's withdrawal of the 2020 Charge. Unlike in *Baskerville*,

Appellant admits she voluntarily entered into the Last Chance Agreement. *See* DE

108, p. 23; DE 69 ¶¶ 23, 25, 28.

Appellant incorrectly argues that in *Basekrville*, someone from the defendant

must have discussed the last chance agreement with the plaintiff. *See* App. DE 18 p.

38. This argument is a misapprehension of the *Baskerville* facts. The *Baskerville*

court specifically states:

> Liezert agreed that removal was appropriate, but decided to offer [p]laintiff a Last Chance Agreement instead because [p]laintiff admitted to the charges and took responsibility for his actions. (Doc. 48-2 at 46:7–12; Doc. 53-1 at 4–5). Liezert **did not discuss the Last Chance Agreement or the Removal with [p]laintiff**.

*Baskerville*, 2021 WL 1338203, at *1 (emphasis added).

Based on the foregoing, Appellant's argument is just unsupported supposition

that someone from the defendant in *Baskerville* must have discussed the last chance

agreement with the plaintiff in *Baskerville*. *See* DE App. 18 p. 38, fn. 8. Nothing in

the *Baskerville* opinion supports Appellant's argument. In fact, the *Baskerville*

opinion states the opposite. Thus, the District Court correctly held that *Baskerville*

does not apply.

31

Appellant also argues that, irrespective of *Baskerville*, the City conditioned the Last Chance Agreement on withdrawal of the 2020 Charge. The District Court, as the trier of fact, correctly held that this argument is undermined by the following undisputed facts:

> when she entered into the Second Agreement and LCA, [Appellant] was represented by two lawyers and the then-FOP president; [Appellant] acknowledged that she voluntarily entered into the Agreements and that no one forced her to enter into the Agreements; and [Appellant] admitted in the LCA that she committed the misconduct alleged in the IA investigation and acknowledged that she could have been terminated from her employment in the City's Police Department as result of that misconduct.

*See* DE 108 pp. 22-23.

Appellant presents no evidence to override the District Court's reliance on the foregoing undisputed facts. Appellant also conveniently ignores the fact that: (1) the Last Chance Agreement references the IA Case, and not the 2020 Charge; and (2) that this is because the 2020 Charge was not the basis for the Last Chance Agreement.

There is no evidence to support Appellant's claim that the Last Chance Agreement and the 2020 Charge are connected. To that end, Appellant ignores the fact that the IA Case came ***before*** her 2020 Charge. *See* DE 69 ¶ 13. This Court should affirm the District Court's Order.

Next, Appellant argues that there is evidence of pretext because, according to then FOP President Paul Ozaeta ("Ozaeta"), without the Last Chance Agreement, the violations that Appellant committed did not rise to the level of termination. *See* DE App. 18 p. 18.

However, Ozaeta also testified that there was no information to indicate that Chief Clements' decision was based on the 2020 Charge or any complaints of harassment. *See* DE 69 ¶ 65; DE 69-23 Ozaeta TR:43-44:10-9. Appellant can't have her cake and eat it too.

She can't claim pretext by using Ozaeta's out of context testimony about the seriousness of the violations Appellant committed but ignore the fact that Ozaeta testified that there was no information to indicate that Chief Clements' decision was based on the 2020 Charge or any complaints of harassment. This Court should affirm the District Court's Order.[19]

---

[19]    Further undermining Appellant's reliance on Ozaeta, he also testified that: (1) the Union's position was that implementation of Appellant's Resignation was ***not*** for a discreet or minor policy violation; (2) there was no basis to challenge the City's implementation of Appellant's Resignation; (3) because of the Last Chance Agreement the City did not have to investigate the allegations against Appellant; and (4) pursuant to the Last Chance Agreement, Chief Clements could have fired Appellant without a meeting. *See* DE 69 ¶ 57, 70; DE 69-23 Ozaeta TR:34:1-5, 48-49:23-1.

**B.      There Are No Deviations From Protocol That Establish Pretext.**

To establish pretext, Appellant must show that a deviation from policy occurred in a discriminatory manner. *See Rojas v. Florida*, 285 F.3d 1339, 1344 n. 4 (11th Cir. 2002). Appellant made no such showing before the District Court.

Appellant alleges "deviations from protocol" establish pretext. Specifically, Appellant argues Lieutenant Cosner initially using the wrong form and sending the form to the City's outside counsel establish he must have known about Appellant's Last Chance Agreement. *See* DE App. 18 pp. 44-45. This argument is woefully insufficient to establish pretext.

First, Appellant's argument is based on pure speculation. Appellant does not cite any evidence to support the notion Lieutenant Cosner knew about Appellant's Last Chance Agreement when he made his allegations. The District Court addressed this issue when it held "[Appellant] does not identify any evidence that at the time he submitted the AAF, Cosner knew about [Appellant's] Second EEOC Charge, the Second Agreement, or the [Last Chance Agreement]." *See* DE 108 p. 24. Here, Appellant cites no record evidence to support her argument Lieutenant Cosner knew about her Last Chance Agreement. Indeed, Appellant's entire argument in this regard is essentially "he just must have known." That is not enough to upset the District Court's ruling. This Court should affirm the District Court.

34

Second, Appellant does not address the District Court's finding that, because the Last Chance Agreement rendered Appellant an employee at will and gave Chief Clements complete discretion, "the City was under no obligation to follow standard procedure."

Finally, even if there was some deviation from policy or protocol, Appellant does not establish or even argue how that deviation occurred in a retaliatory manner. As stated above, and as the District Court correctly held, it is undisputed Lieutenant Cosner did not know about the 2020 Charge or the Last Chance Agreement when he made his allegations against Appellant. Appellant's supposition cannot refute this. Therefore, Appellant cannot connect Lieutenant Çosner's conduct to any retaliatory motive. *See* DE 69, ¶¶ 50-51; DE 69-6 Cosner TR:40:5-14, 40-41:21-2, 41-42:23-5, 146-147:18-10; DE 69-17 Appellant Vol. I TR:109-111:7-18; DE 69-21, p. 8, responses to Request No. 34. This Court should affirm the District Court.

## CONCLUSION

Based on the foregoing, the City respectfully request that this Court affirm the District Court's entry of Summary Judgment and Final Judgment in favor of the City.

/s/ *Michael L. Elkins*
Michael L. Elkins
Florida Bar No. 0523781
melkins@mlelawfirm.com
**MLE LAW**
1212 Northeast 16thTerrace
Fort Lauderdale, FL 33304
Tel.: 954.401.2608
*Co-Counsel for Appellee The City of Miami Beach*

By: /s/*Henry J. Hunnefeld*
Henry J. Hunnefeld, Esq.
Florida Bar No. 343811
henryhunnefeld@miamibeachfl.gov
**CITY OF MIAMI BEACH**
**CITY ATTORNEY**
City Attorney's Office
1700 Convention Center Drive
Fourth Floor- Legal Department
Miami Beach, FL 33139
Telephone: 305.673.7470
*Co-Counsel for Appellee The City of Miami Beach*

36

## CERTIFICATE OF COMPLIANCE

This Brief complies with the typeface requirement of Fed. R. App. P. 32(a)(5)(A), the type style requirements of Fed. R. App. P. 32(a)(7)(B)(i) as it contains 7,819 words.

*/s/Michael Elkins*
Michael Elkins

## CERTIFICATE OF SERVICE

**I CERTIFY** that on October 17, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

_s/Michael L. Elkins_
Michael L. Elkins

## SERVICE LIST

CASE NO.: 25-10987

Michael J Ellis, Esq.
michael@alexanderappeals.com
**ALEXANDER APPELLATE LAW P.A.**
1022 Park Street, Suite 206
Jacksonville, FL 32204
_Counsel for Appellant_

Daniel J. Barroukh, Esq.
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP, PLLC**
520 Brickell Key Drive
Suite O-301
Miami, FL 33131
_Appellant's Trial Counsel_