No. 25-10987

---

# In the United States Court of Appeals for the Eleventh Circuit

—————————————

Jessica Guasto (n/k/a Jessica Salabarria),

*Appellant*

v.

The City of Miami Beach, FL,

*Appellee.*

On Appeal from the United States District Court
for the Southern District of Florida, Miami Division
Case No. 22-1004-CIV-DAMIAN, Hon. Melissa Damian

—————————————

## APPELLANT'S REPLY BRIEF

—————————————

Michael J Ellis
Alexander Appellate Law P.A.
1022 Park Street, Suite 206
Jacksonville, FL 32204
(689) 259-5010
michael@alexanderappeals.com
*Counsel for Appellant*

## <u>CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Eleventh Circuit Rule 26.1-1, counsel of record for Jessica Salabarria (f/k/a Jessica Guasto) certifies that, to the best of his knowledge, the following is a complete list of the trial judge(s), all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of the case or this petition, including subsidiaries, conglomerates, affiliates and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other identifiable legal entities related to a party.

I. Corporate Disclosure Statement

Neither corporation is owned by any publicly traded company, nor is either corporation publicly traded. Pursuant to 11th Cir. R. 26.1-3(b), no publicly traded company or corporation has an interest in the outcome of this appeal.

II. Certificate of Interested Persons

1. Alexander Appellate Law P.A.

2. Alexander, Samuel, Esq.

   c/o Alexander Appellate Law P.A.

3.  Braun, Benjamin

4.  City of Miami Beach, Florida

5.  Clements, Richard

6.  Cosner, Steven

7.  Damian, Melissa

8.  Daragjati, Paul

9.  Derek Smith Law Group PLLC

10. Elkins, Michael

11. Ellis, Michael J

12. Gayle, Darrin P

13. Guasto, Jessica (n/k/a Jessica Salabarria)

14. Hunnefeld, Henry

15. MLE Law

16. Paz, Rafael A

17. Torres, Edwin G

December 8, 2025                          /s/ Michael J Ellis
                                         Michael J Ellis

ii

**TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT.................................................................... i

TABLE OF AUTHORITIES ................................................................ iv

INTRODUCTION .............................................................................. 1

    I.    That Ms. Salabarria Waived Her Right to a Jury Trial, Then Used Jury-Centric Language in the Opening Brief, Does Not Compel Affirmance......................... 1

    II.    The City's Twin Lack-of-Preservation Arguments—Both Seeking to Mute the Most Damning Aspects of This Appeal—Both Fail. ........................................................ 7

    III.    The LCA and EEOC Charge Are Connected, and the City's Insistence Otherwise Avoids the Novel, Baskerville/Knox Issue—Which Issue Favors Holding Oral Argument.................................................................14

CONCLUSION...................................................................................19

# TABLE OF AUTHORITIES

## Cases

*Bartley v. Kim's Enter. of Orlando, Inc.*,
   568 Fed. Appx. 827 (11th Cir. 2014) ..................................................12

*Baskerville v. Sec'y of Dep't of Veteran Affairs*,
   No. 6:18-CV-1728-WWB-DCI,
   2021 WL 1338203, at *2 (M.D. Fla. Feb. 8, 2021) ......................*passim*

*Childrey v. Bennett*,
   997 F.2d 830 (11th Cir. 1993) .......................................................... 7

*ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*,
   113 F.4th 1312 (11th Cir. 2024) ................................................12, 13

*Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*,
   830 F.3d 1242 (11th Cir. 2016) .......................................................2, 3

*Gould v. Interface, Inc.*,
   153 F.4th 1346 (11th Cir. 2025) ................................................12, 13

*Kelley v. Pemco Aeroplex, Inc.*,
   No. CV-05-BE-1131-S,
   2006 WL 8436730, at *14 (N.D. Ala. Dec. 12, 2006) ..........................16

*Knox v. Roper Pump Co.*,
   957 F.3d 1237 (11th Cir. 2020) ..............................................14, 16, 17

*McCreight v. AuburnBank*,
   117 F.4th 1322 (11th Cir. 2024) ........................................................ 8

*Staub v. Proctor Hosp.*,
   562 U.S. 411 (2011) ........................................................................13

*VFS Leasing Co. v. Markel Ins. Co.*,
   120 F.4th 745 (11th Cir. 2024) ................................................9, 12, 13

## **INTRODUCTION**

The City's Answer Brief (cited as "AB") raises form-over-function arguments designed to mute the most important aspects of what this Court must analyze to resolve this single issue employment discrimination appeal. And some of the City's arguments are supported with citation to dissenting opinions without acknowledgement that the opinions relied upon are, in fact, dissents. The City also continues arguing that—although the LCA was implemented and the EEOC charge dropped in the same exact document—implementation of the LCA and dismissal of the EEOC charge are somehow <u>not</u> connected in any way.

To prevent these deficiencies (and others) from impacting this Court's analysis, it is necessary to file this reply brief.

### **I.     That Ms. Salabarria Waived Her Right to a Jury Trial, Then Used Jury-Centric Language in the Opening Brief, Does Not Compel Affirmance.**

The City overstates the impact of Ms. Salabarria's waiver of her right to a jury trial. The City also draws false equivalency between waiving jury trial rights and consenting to decide the case on the papers.

As a preliminary matter, in the most technical sense, the City does raise one fair point: because Ms. Salabarria waived her right to a jury

1

trial, it was confusing for Ms. Salabarria to use jury-centric language when arguing that summary judgment was improperly granted. *See* AB 20-21 ("Appellant waiver her right to a jury trial. *See* DE 40. Therefore, analysis of what a reasonable juror might conclude has no place for consideration in this appeal."). But the City's semantic point does not compel affirmance, which is its primary argument.[1]

Diction aside, the City's argument on this point doesn't hold water. With reliance on Ms. Salabarria's waiver of a jury trial, the City likens this case to this Court's distinguishable decision in *Florida Int'l Univ. Bd. of Trustees v. Florida Nat'l Univ., Inc.*, 830 F.3d 1242, 1253 (11th Cir. 2016) ("*FIU v. FNU*"), which reviewed a summary-judgment order as though it were an order entered after a bench trial – giving heightened deference to the trial court's decision. But the various "unique

---

[1] The City puts form over function. For brevity's sake in the opening brief, Ms. Salabarria couched her argument in terms of pretext being a "jury question" as a shorthand heuristic. *See* IB 19, 23, 26, 27, 32. Using phrases like this eliminated the need to reprint the clunk summary-judgment language ("the trial court reversibly erred when it entered summary judgment because a genuine issue of material fact existed as to pretext") *ad nauseam* throughout the brief. In hindsight, "factfinder" would've been a better and more accurate heuristic. But Ms. Salabarria's use of jury-centric language does not impact the underlying legal argument; and it certainly does not compel affirmance, as the City urges.

circumstances of [that] case" are not present here. *Id.* The City's reliance on *FIU v. FNU* is misplaced for the following three reasons.

***First,*** there was no waiver of a jury trial in *FIU v. FNU*, which is the sole basis on which the City compares this case to *FIU v. FNU*. *Id.* It is therefore a *non sequitur* for the City to argue that this Court must affirm under *FIU v. FNU* simply because Ms. Salabarria waived her right to a jury trial and then used jury-centric language (instead of "factfinder") to articulate reversible error in the opening brief.

***Second***, in *FIU v. FNU*, the case was set for a bench trial – but then both parties asked the district court judge to forgo the conventions of a bench trial and decide the case based on only the papers and oral argument. *Id.* at 1250. In other words, the parties consented to trying the case on the papers: no jury trial, no bench trial. *Id.* Below, nothing of the sort occurred. There was neither bench trial nor hearing below: no opportunity for the district court to weigh witness credibility or hear legal argument from counsel. To this, Ms. Salabarria did not consent. She waived her right to a jury trial; she did not waive her right to a factfinder; nor did she consent to trying the case on the papers. DE 40.

3

***Third***, Ms. Salabarria—unlike the parties in *FIU v. FNU*—<u>never</u> agreed that "presentation of additional evidence or **live witness testimony would be unnecessary**." *Id.* at 1253.[2] Again: Ms. Salabarria waived her right to a trial by jury; she did not waive her right to trial altogether. DE 40. Also notable, the causes of action in *FIU v. FNU* were well-suited to a bench trial: the claims were highly technical intellectual property issues – none of which hinged on the intangible motivations of the litigants' actions. *Id.* at 1249. Here however, determining whether the City acted pretextually in the way it implemented the LCA, and then fired Ms. Salabarria pursuant to the LCA on her first shift back, inherently draws on the credibility of the witnesses.

Recall that the City's top brass all agreed that Ms. Salabarria would not have been fired for such minor alleged misconduct *unless* the LCA had been in place, making the circumstances surrounding the implementation of the LCA almost more critical to the overarching pretext inquiry than the actual grounds for firing. DE 69-23, Tr. 65:1-11 (then FOP Union President testimony); DE 69-24 Tr. 66:2-6 (FOP VP testimony); DE 69-16 Tr. 96:1-7 (City Police Chief testimony). But the

---

[2] All emphasis is added unless noted otherwise.

uniformity of testimony ends there, as contradictory testimony clouds other aspects of the LCA – which is very probative in the pretext analysis.

For example, there is conflicting testimony between Ms. Salabarria and Lieutenant Cosner (her spurned admirer) regarding whether Cosner knew that Ms. Salabarria's employment was on thin ice via the LCA when he reported her for alleged minor misconduct—to the City's outside counsel, in an unusual deviation from protocol—during her first shift back. *Compare* DE 69-17, Tr. 109:7-111:18 (Ms. Salabarria's testimony that it was "common knowledge throughout the whole station" that her employment was governed by an LCA during a pending EEOC charge given the "open" conversations on the subject in vicinity to Cosner), *with* DE 69-6, Tr. 147:4-17 (Cosner's testimony disclaiming knowledge of Ms. Salabarria's LCA and pending workplace grievances).

Notwithstanding the jury trial waiver, Ms. Salabarria is entitled to—in front of a factfinder—present her in-person testimony as to what she believed her spurned admirer knew, cross-examine that spurned admirer regarding his contrary testimony, and for the factfinder to determine who is telling the truth as it adjudicates the pretext question.

5

Ms. Salabarria is entitled to ask Cosner the following question in cross examination, and for the factfinder to evaluate the response:

> *If you truly did not know about the LCA, then why did you take the highly unusual step of reporting Ms. Salabbaria's minor misconduct—not up the chain of command—but to the City's outside counsel?*

But by ruling on the papers, as the district court did, the district court deprived Ms. Salabarria of presenting the court with the "additional data" of witness credibility – which is key to the pretext analysis in this particular case. *Id.* at 1252.

Also at issue is the "additional data" of Chief Clements' credibility vis-à-vis the circumstances surrounding the implementation of the LCA. *Id.* Chief Clements made the objectively false claim in deposition that the LCA "was <u>not</u> in conjunction with the EEOC" charge being dropped, DE 69-16 Tr. 79:12-80:1, despite the face of the Settlement linking dismissal of the EEOC charge with implementation of the LCA, DE 71-4 at pp.1-2. Ms. Salabarria deserves the opportunity to cross-examine Clements regarding this false statement in front of a factfinder, and for the factfinder to make a credibility determination as to why Clements would

make such a false statement as part of the pretext analysis. But this kind of "additional data" vanishes when ruling on the papers.

As the City acknowledged by citing *Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993), even in the bench trial context, it is within the "exclusive province of the judge in non-jury trials to assess the credibility of witnesses and to assign weight to their testimony." But this never happened below. Reversal is required for a bench trial so that a factfinder can make pivotal determinations regarding the conflicting evidence.

## II. The City's Twin Lack-of-Preservation Arguments—Both Seeking to Mute the Most Damning Aspects of This Appeal—Both Fail.

As with the City's primary argument on appeal, its second argument is little more than a semantic grievance about diction.

Despite dropping appellate preservation footnotes in the opening brief indicating where in the record she preserved certain arguments for appeal, the City argues Ms. Salabarria raised unpreserved arguments by (1) characterizing Chief Clements' suspicious communications as a "misinformation campaign" indicative of pretext, and (2) reiterating the *Baskerville*-based argument raised below, but with reliance on additional evidentiary support from the City's HR Director. *Compare* IB 33 n.9

7

(appellate preservation footnote as to misinformation campaign), *and* IB 34 n.10 (appellate preservation footnote for *Baskerville*-based argument), *with* AB 23 (arguing Ms. Salabarria did not preserve argument that Clements' actions evinced pretext because she did not use the phrase "misinformation scheme" below), *and* AB 26 (arguing lack of preservation of *Baskerville*-based argument). The City's argument is unfounded.

As a preliminary matter, the City's preservation argument, AB 21, is heavily reliant on this Court's dissenting opinion in *McCreight v. AuburnBank*, 117 F.4th 1322, 1342 (11th Cir. 2024) (Hull, J., concurring in part, dissenting in part), without acknowledging a significant caveat: that it was relying on a *dissenting* opinion. *See id.* ("However, I am unable to join Section IV as to the plaintiffs' age discrimination claims because Section IV does not follow our forfeiture precedent and violates our prior panel precedent rule.").

Further, to the extent the City supports its argument with binding authority, its argument is incompatible with how this Court differentiates between raising new issues on appeal (impermissible) and making new or restyled arguments on appeal (permissible). *VFS Leasing*

8

*Co. v. Markel Ins. Co.*, 120 F.4th 745, 749 (11th Cir. 2024) (collecting caselaw supporting the same proposition).

Here, Ms. Salabarria raised neither new issue nor new argument. Her "theory has consistently been," *id.* at 750, that Chief Clements' series of bizarre communications preceding her termination (call it what you'd like) evinced retaliatory animus against her protected activity. The same goes for the *Baskerville*-related arguments. As explained below, both "theories", as the City calls them, were raised in the district court – even if phrased differently on appeal, or colored with additional record evidence on appeal.

***First***, the City incorrectly argues Ms. Salabarria never below raised the "theory" that Chief Clements' suspicious communications factored into the pretext analysis. AB 23-24. This lack-of-preservation argument was predicted in the opening brief and is misguided.[3]

In opposition to the City's summary-judgment motion, Ms. Salabarria repeatedly relied on Chief Clements' suspicious

---

[3] In Ms. Salabarria's opening brief, she explained in an "appellate preservation" footnote that Chief's Clements' suspicious communications would be stylistically dubbed a "misinformation" scheme as a shorthand, even though that "nomenclature" was not used below in the argument regarding Chief Clements' series of suspicious activity. IB 33 n.9.

communications as evidence of pretext and the retaliatory conspiracy to

fire her – almost to the point of redundancy. Specifically, she:

(i)    Articulated how Chief Clements surreptitiously "***wriggled his way*** onto a call"—on which he was <u>not</u> permitted—in the chain of events leading to Ms. Salabarria dropping her pending EEOC charge. DE 70 pp.6-7;

(ii)   Emphasized how Chief Clements' actions were of an "***unlawful nature***" and how it was "made expressly clear" to her from Chief Clements that agreeing to the LCA was predicated on dropping the EEOC charge. *Id.* at p.7;

(iii)  Emphasized—when arguing pretext—that the LCA made her "***vulnerable to termination*** *solely* because she" agreed to drop her EEOC charge. *Id.* at p.9; and

(iv)   Labeled a subsection of her opposition aptly, "Plaintiff and Defendant Would Not Have Entered Into the Last Chance Agreement If Plaintiff Had Not Filed Her 2020 EEOC Charge Against Defendant" – showing that Ms. Salabarria has explicitly been relying on Chief Clements' misinformation campaign as evidence of pretext throughout. *Id.*

And those were just some of the arguments raised under the

*McDonnell Douglas* framework. Ms. Salabarria also relied on Chief

Clements' misinformation campaign in arguments under the "convincing

mosaic" framework. DE 70 pp.17-20. Of the eleven pieces of evidence from

10

"which unlawful intent may be inferred", the first three all harkened back to Chief Clements' misinformation campaign:

> (1) ***Clements' threatening statements*** to Nicholas Gusto following the filing of Plaintiff's 2020 EEOC Charge [;] (2) ***Clements using third party individuals*** to discuss with Nicholas Gusto over the phone to avoid a record of discussion; (3) Plaintiff and Defendant's Settlement Agreement being ***contingent*** on the dismissal of her 2020 EEOC Charge and entering into a Last Chance Agreement.

DE 70 p.19.

The argument relating to Chief Clements' misinformation campaign was preserved. By arguing otherwise, the City ignores the actual arguments raised below. The argument was not waived simply because Ms. Salabarria had not sloganeered the phrase "misinformation campaign" until appeal.

***Second***, the City argues that, because Ms. Salabarria raised the *Baskerville*-related argument below without specific reliance on the HR Director's affidavit in the opposition to the summary-judgment motion, she is prohibited from mentioning that record evidence in support of the *Baskerville*-related argument on appeal. Based on legion caselaw from this Court, Ms. Salabarria disagrees.

11

Even where a party cites a completely new "statutory provision" which it "did not cite to the district court," the party is entitled to rely on the new source of law if it advances the same case theory raised below. *VFS Leasing*, 120 F.4th at 750. *See also Gould v. Interface, Inc.*, 153 F.4th 1346, 1355 (11th Cir. 2025) *(*"By contrast, a party can cite new interpretive rules and authorities to bolster its **previously presented theory** that a text has a particular meaning." (citing *ECB USA, Inc. v. Chubb Ins. Co. of New Jersey*, 113 F.4th 1312, 1320 (11th Cir. 2024)); *Bartley v. Kim's Enter. of Orlando, Inc.*, 568 Fed. Appx. 827, 836 (11th Cir. 2014) ("Although FIP, in moving for judgment as a matter of law, did not specifically argue—as it does on appeal—that the police were entitled to detain the plaintiffs to ensure officer and public safety, it did make the broader claim that the challenged detention was lawful. Having preserved that broader claim in the district court, FIP is not precluded from raising new arguments in support of that claim on appeal.").

Under such authority, Ms. Salabarria's reliance on a new piece of evidence (HR Director's affidavit) in support of the same theory she raised below (the *Baskerville*-related argument that it is improper to condition an LCA on dismissing an EEOC charge) is permissible. The

12

only distinction between this case and *VFS Leasing*, *Gould*, and *ECB USA* is that the "new" component on appeal is additional evidentiary support rather than additional legal support. But this is distinction crries no legal difference. The *Baskerville*-related argument was preserved. Indeed, it is typical for appellate briefing to add greater detail and depth to the arguments a busy trial attorney raised in the district court.

Juxtaposition with an example of what would have actually constituted an unpreserved argument might be instructive. For example, Ms. Salabarria would've raised an unpreserved appellate issue by asserting on appeal the distinct "cat's paw" theory of liability under *Staub v. Proctor Hosp.*, 562 U.S. 411, 416 n.1 (2011).  Although the City below rebutted the "cat's paw" theory of discrimination, DE 70 p.12, she was prevented from raising this distinct liability theory on appeal because did not "previously present[]" or travel under this distinct liability theory below. *Gould*, 153 F.4th at 1355 (citing *ECB USA*, 113 F.4th at 1320). So while Ms. Salabarria was entitled to, and did, rely on Cosner's historical actions as Ms. Salabarria's spurned admirer as evidence of pretext, it would be another thing altogether to raise a distinct theory of liability.

### III. The LCA and EEOC Charge Are Connected, and the City's Insistence Otherwise Avoids the Novel, *Baskerville/Knox* Issue—Which Issue Favors Holding Oral Argument.

The face of the December 2020 Settlement Agreement makes clear that the implementation of the LCA—and dismissal of the EEOC charge—were "connected" despite the City's protestation otherwise. In one fell swoop, the LCA was implemented and the EEOC charge dropped:

DocuSign Envelope ID: 5C3C694AA8485-A997-955B-8725D7C89E5EF Case 1:22-cv-21004-MD  Document 71-4  Entered on FLSD Docket 06/03/2024  Page 1 of 11

**SETTLEMENT AGREEMENT**

The SETTLEMENT AGREEMENT ("Agreement") is entered into, by, and between the CITY OF MIAMI BEACH, its elected and appointed officials, its employees, and its insurers, attorneys, or agents of any kind (collectively, the "City"); JESSICA SALABARRIA ("Salabarria") and the FRATERNAL ORDER OF POLICE, WILLIAM NICHOLS LODGE NO. 8 ("FOP") (all collectively, the "Parties").

WHEREAS, Salabarria is employed by the City in its Police Department; and

WHEREAS, the FOP is the exclusive bargaining representative for a bargaining unit of City police employees, including Salabarria; and

WHEREAS, Salabarria is the subject of an on-going Internal Affairs investigation, I.A. Case No. 2020-010 ("the Investigation"); and

WHEREAS, Salabarria has filed an EEOC Charge, EEOC Charge No. 510-2020-04794 ("EEOC Charge"); and

WHEREAS, the Investigation and EEOC charge are all pending and constitute all the charges, investigations and grievances by or on behalf of Salabarria that have been or may be filed as of the Effective Date of this Agreement that have not otherwise been resolved or otherwise achieved finality; and

WHEREAS, the Parties, wish to avoid the burdens of further investigation, litigation and to resolve the disputes between them.

NOW, THEREFORE, intending to be legally bound but without setting precedent, do hereby agree as follows:

1.    Recitals. The Parties acknowledge and agree that the Recitals above are true to the best of their knowledge and belief and incorporate them as if fully set forth here and that the Recitals are a material inducement for the Parties to enter into this Agreement.

2.    **EEOC Charge Withdrawn With Prejudice and Discipline.** Salabarria and the FOP agree that, by executing this Agreement, they will simultaneously withdraw the Charge with prejudice by executing the attached Notice of Withdrawal with Prejudice and immediately filing same with the EEOC. Additionally, as discipline for the matters that are the subject of the Investigation, Salabarria agrees to accept the following:

    a.    A One Hundred and Sixty (160) hour suspension,

    b.    Payback of Eighty-Six (86) total hours, of which Forty-Four (44) Hours is regular time and Twenty-Four (24) hour is overtime. The regular rate is Forty-Four Dollars and 14/100 ($44.14) for a total of One Thousand Nine Hundred Forty-Two Dollars and 00/100 ($1,942.16) of regular time. The overtime hourly rate is Sixty-Six Dollars and 21/100 ($66.21), for a total amount of One

1

City 001235

14

Thousand Five Hundred Eighty-Nine Dollars and 04/100 ($1,589.04). **Accordingly, the Total Amount due to the City is Three Thousand Five Hundred Thirty-One Dollars and 20/100 ($3,531.20) ("the Total Amount").** Salabarria can pay the Total Amount via a cashier's check made payable to the City of Miami Beach on or before January 4, 2021. If the City does not receive full payment on or before 5:00 p.m. on January 4, 2021, then the City is authorized to deduct the remaining amounts due from Salabarria's vacation leave bank.

c. Salabarria will execute the attached Last Chance Agreement, which contains additional provisions. The Last Chance Agreement is incorporated by reference into this Agreement.

d. Permanent deletion, from all platforms (platforms includes but is not limited to: Apple Podcasts, Stitcher, Spotify, Spotify Podcasts, Google Play Music, Google Podcasts, iHeart Radio, and any other social media and/or electronic platform) the podcast titled: "Cafecitos y Chisme with Nick & Jess."

e. Salabarria will immediately have a meeting with the Chief of Police wherein she will address the claims made in the Charge, including but not limited to identifying the names of all persons who allegedly engaged in the conduct addressed in the Charge. The refusal to name the persons who have allegedly engaged in the conduct in the Charge shall be grounds for immediate termination, as discussed in the attached Last Chance Agreement. Salabarria shall be entitled to have a Union Representative with her during this meeting.

DE 71-4 at pp.1-2 (highlighting added).

Despite how clear it is that this Settlement, with one stroke of the pen, both (i) implemented the LCA, and (ii) mandated the dismissal of the pending EEOC charge, the City maintains that these two events are not "connected" in any way. *See* AB 32 ("There is no evidence to support Appellant's claim that the Last Chance Agreement and the 2020 Charge are connected."); *see also* AB 30 (complaining that Ms. Salabarria keeps "trying to connect the [LCA] to her 2020 [EEOC charge]"). Notably, the City is parroting the same indefensible testimony from Chief Clements.

DE 69-16 Tr. 79:12-80:1, Tr. 146:11-24.[4] As this Court can see, objectively so, that the City and Chief Clements are incorrect.

But what is more subtle is why it matters that the LCA and EEOC charge are connected: because the City knows it was improper to condition Ms. Salabarria's continued employment under an LCA on her dismissal of the EEOC charge; because it knows that the act of conditioning continued employment under the LCA on Ms. Salabarria dropping her EEOC charges reveals its animus against her protected activity. *See Baskerville v. Sec'y of Dep't of Veteran Affairs*, No. 6:18-CV-1728-WWB-DCI, 2021 WL 1338203, at \*2 (M.D. Fla. Feb. 8, 2021); *Knox v. Roper Pump Co.*, 957 F.3d 1237, 1245 (11th Cir. 2020); *Kelley v. Pemco Aeroplex, Inc.*, No. CV-05-BE-1131-S, 2006 WL 8436730, at \*14 (N.D. Ala. Dec. 12, 2006) ("A reasonable jury could also conclude that Cotton's ***motive for entering* into a LCA agreement** was not to rectify what

---

[4] Chief Clements' false testimony is especially suspect considering Ms. Salabarria testified at length regarding how the meeting *before* signing the Settlement was a bait-and-switch: following Chief Clements' misinformation campaign, Ms. Salabarria entered the meeting believing it would be a forum to discuss the misconduct for which the EEOC charge remained pending, but then Chief Clements shut down that topic and presented a surprise PowerPoint about Ms. Salabarria's reported misconduct. *See* DE 69-17, Tr. 122:25-126:25.

16

the EEOC concluded was a wrongful termination, but to have another opportunity to terminate Kelley's employment a second time, using essentially the same rationale as the first termination, but with the knowledge that Kelley would be foreclosed from seeking legal relief from any claims related to his first termination. From these facts and others, a reasonable juror could conclude that Kelley's termination was not wholly unrelated to his complaints of disability discrimination.").

Indeed, in the opening brief, Ms. Salabarria earmarked this exact issue as oral-argument worthy, proactively addressed how the "biggest distinction between this case and *Baskerville/Knox* [(between acceptance/rejection of the LCA)]" did "not negate Ms. Salabarria's reliance on *Baskerville* or *Knox,*" IB 29, but then the City ducked the tough aspects of the *Baskerville* conversation. The City did not rebut Ms. Salabarria's actual argument: under *Baskerville* and *Knox,* that the City conditioned the LCA on Ms. Salabarria dropping her EEOC charges does not *unbecome* evidence of its animus against protected activity just because she accepted the LCA. IB. 29-30. On this point, which is the most critical aspect of Ms. Salabarria's *Baskerville*-related argument, there is no argument in the City's brief for her to rebut.

Recall that the question is not whether the City "could have fired" Ms. Salabarria under the LCA, but whether it "would have fired" her "but-for" the (i) implementation of the LCA, and (ii) existence of her pending EEOC charges. *Knox*, 957 F.3d at 1247. And as the City's top brass testified, Ms. Salabarria would not have been fired for the misconduct Cosner reported but-for the implementation of the LCA— which was implemented in the same Settlement in which she ***dropped her EEOC charge.*** Not only does the City's silence on the critical aspects of Ms. Salabarria's argument suggest the lack of a coherent rebuttal, but it underscores how useful oral argument would be in this case.

In closing, Ms. Salabarria states the obvious. If the City was not retaliatorily motivated when it implemented the LCA, and then fired Ms. Salabarria on her first shift back pursuant to the LCA, then: (I) the City police chief would not have engaged in an elaborate, prolonged misinformation campaign aimed at bringing Ms. Salabarria to the bargaining table and giving everyone the impression that it was Ms. Salabarria who wanted to drop her EEOC charge in the same document implementing the LCA; and (II) the Settlement Agreement would not have, on its face, simultaneously implemented the LCA and dropped the

18

pending EEOC charge. But those are precisely the facts of this case. Ultimately, she was fired not for minor misconduct, but because she never hesitated to speak up about any of the sexual harassment she endured over the years with the City of Miami Beach Police Department, and the City was sick of it. The district court reversibly erred when it entered summary judgment on pretext. The evidence in the case warrants a trial before a *factfinder* who can evaluate the credibility of the witnesses as it adjudicates whether the City acted pretextually.

## CONCLUSION

Ms. Salabarria reiterates her request for oral argument and requests that this Court reverse and remand for a bench trial.

Respectfully Submitted,

/s/ Michael J Ellis
Michael J Ellis
Fla. Bar No. 1025056
Alexander Appellate Law P.A.
1022 Park Street, Suite 206
Jacksonville, FL 32204
(689) 259-5010
michael@alexanderappeals.com
service@alexanderappeals.com
*Counsel for Appellant*

December 8, 2025

19

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2025 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

Daniel J. Barroukh, Esq.
Fla. Bar. No. 1049271
danielb@dereksmithlaw.com
**DEREK SMITH LAW GROUP PLLC**
520 Brickell Key Drive
Suite O-301
Miami, FL 33131
*Appellant's Trial Counsel*

Michael L. Elkins, Esq.
Florida Bar No. 523781
melkins@mlelawfirm.com
**MLE LAW**
1212 NE 16th Terrace
Fort Lauderdale, FL 33304
*Co-Counsel for Appellee*

Henry Hunnefeld, Esq.
Florida Bar No. 343811
henryhunefeld@miamibeachfl.gov
Benjamin J. Braun, Esq.
Florida Bar No. 1017937
benjaminbraun@miamibeachfl.gov
**CITY OF MIAMI BEACH CITY ATTORNEY**
City Attorney's Office
1700 Convention Center Drive
Fourth Floor- Legal Department
Miami Beach, FL 33139
*Co-Counsel for Appellee*

20

/s/ Michael J Ellis
Michael J Ellis
Fla. Bar No. 1025056
Alexander Appellate Law P.A.
1022 Park Street, Suite 206
Jacksonville, FL 32204
(689) 259-5010
michael@alexanderappeals.com
service@alexanderappeals.com
*Counsel for Appellant*